UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Michael Dufresne,
    Claimant

   v.                                    Case No. 19-cv-636-SM
                                         Opinion No. 2020 DNH 021

Andrew Saul, Commissioner,
Social Security Administration,
    Defendant

**O R D E R**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), claimant, Michael Dufresne, moves to reverse or vacate the Commissioner's decision denying his applications for Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income Benefits under Title XVI. See 42 U.S.C. §§ 423, 1381-1383c (collectively, the "Act"). The Commissioner objects and moves for an order affirming his decision.

For the reasons discussed, claimant's motion is granted to the extent he seeks a remand for further proceedings, and the Commissioner's motion is denied.

**Factual Background**

I.  Procedural History.

In June of 2015, claimant filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging that he was disabled and had been unable to work since November 15, 2009. Claimant was 40 years old at the time and had acquired sufficient quarters of coverage to remain insured through December 31, 2014.[1] Claimant's applications were denied and he requested a hearing before an Administrative Law Judge ("ALJ").

In February of 2017, an ALJ held a hearing at which claimant and a vocational expert testified. Two months later, the ALJ issued his written decision, concluding that claimant was not disabled. Claimant then requested review by the Appeals Council. That request was granted and after review, the Council remanded the matter to the ALJ for a new hearing and additional findings. Admin. Rec. at 192-94 (noting that the "record indicates that the claimant has the severe impairment of a

---

[1]  As the ALJ noted, claimant's applications for benefits require an inquiry into his disability status during two time periods. The first, relating to his application for DIB benefits under Title II, runs from his alleged onset date through his date last insured. The second, relating to his application for SSI under Title XVI, runs from his alleged onset date through the date of the ALJ's decision. See Admin. Rec. at 87.

2

fistula, which leaks fecal matter on an ongoing basis, but the <u>residual functional capacity assessment contains no limitations that would correspond with this impairment</u>") (emphasis supplied).

A second hearing was held before the ALJ on August 9, 2018, at which claimant, a vocational expert, and two medical experts testified. In September of 2018, the ALJ issued a second unfavorable decision, concluding that claimant was not disabled at any time from his alleged onset date through the date of the ALJ's decision. Claimant again requested review by the Appeals Council. That request was denied. Accordingly, the ALJ's denial of claimant's applications for benefits became the final decision of the Commissioner, subject to judicial review. Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence.

Claimant then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 8). In response, the Commissioner filed a "Motion for an Order to Affirm the Commissioner's Decision" (document no. 10). Those motions are pending.

3

II. Factual Background.

A detailed factual background can be found in claimant's Statement of Material Facts (document no. 8-1) and the Commissioner's Statement of Omitted Facts (document no. 11). Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I. "Substantial Evidence" and Deferential Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c)(3). See also Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Importantly, then, it is something less than a preponderance of the evidence. So, the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding

from being supported by substantial evidence.  See Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).  See also Richardson v. Perales, 402 U.S. 389, 401 (1971).

II.  The Parties' Respective Burdens.

An individual seeking SSI and/or DIB benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  See also 42 U.S.C. § 1382c(a)(3)(A).  The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment.  See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that his impairment prevents him from performing his former type of work.  See Manso-Pizarro v. Secretary of Health & Human Services, 76 F.3d 15, 17 (1st Cir. 1996); Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985).  If the claimant demonstrates an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform, in

5

light of his age, education, and prior work experience. See
Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2
(1st Cir. 1982). See also 20 C.F.R. §§ 404.1512, 404.1560,
416.912, and 416.960.

In assessing a disability claim, the Commissioner considers
both objective and subjective factors, including: (1) objective
medical facts; (2) the claimant's subjective claims of pain and
disability, as supported by the claimant's testimony or that of
other witnesses; and (3) the claimant's educational background,
age, and work experience. See, e.g., Avery v. Secretary of
Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986);
Goodermote v. Secretary of Health & Human Services, 690 F.2d 5,
6 (1st Cir. 1982). Ultimately, a claimant is disabled only if
his:

> physical or mental impairment or impairments are of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). See also 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm his decision.

**Background - The ALJ's Findings**

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920. See generally Barnhart v. Thomas, 540 U.S. 20, 24 (2003). Accordingly, he first determined that claimant had not been engaged in substantial gainful employment since his alleged onset of disability: November 15, 2009. Admin. Rec. at 15. Next, he concluded that claimant suffers from the following severe impairments: "substance abuse, depressive disorder NOS, panic disorder with agoraphobia, fistula." Id. Next, the ALJ concluded that if claimant stopped his alcohol abuse, he would not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in Part 404, Subpart P, Appendix 1. Admin. Rec. at 16-19. Claimant does not object to any of those findings.

Next, the ALJ concluded that if claimant stopped the alcohol abuse, he would retain the residual functional capacity

7

("RFC") to perform the exertional demands of "light" work, subject to the following limitations:

> he [can] do no more than frequent climbing of ramps and stairs and never climb ladders, ropes, or scaffolds. He [can] do no more than occasional stooping, kneeling, crouching, and crawling. The claimant is limited to performance of simple, repetitive tasks. He can have no more than occasional changes in the work environment. He can have no interaction with the general public. He can have no more than occasional changes in work demands. He cannot travel to new work sites.

Id. at 19. In light of those restrictions, the ALJ concluded that even if claimant stopped the alcohol abuse, he would not be capable of performing any past relevant work. Id. at 24. See also Id. at 74-75 (vocational expert's testimony about claimant's work history as an assembler/fitter, order clerk, order picker, shipping clerk, and forklift operator).

At the final step of the analysis, the ALJ considered whether there were any jobs in the national economy that claimant might perform – again, assuming he were to stop abusing alcohol. Relying upon the testimony of the vocational expert, the ALJ concluded that, notwithstanding claimant's exertional and non-exertional limitations, "if the claimant stopped the substance use, he would be capable of making a successful adjustment to work that exists in significant numbers in the

8

national economy." Id. at 25. Consequently, the ALJ concluded that "because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision." Id.

**Discussion**

I. Claimant's Assertions.

Claimant challenges the ALJ's decision on three grounds, asserting that he erred by: (a) failing to address three vocational opinions that employers would not tolerate an employee with open fistulas that leak stool and gas in the workplace;[2] (b) giving great weight to the testimony of medical expert Dr. Claiborn without explaining why he did not adopt Dr. Claiborn's opinions in their entirety; and (c) failing to discuss or weigh the opinions of examining psychologist Dr. Pike.

Because the ALJ did not adequately address the vocational impact of claimant's fistulas – that is, whether employers would

---

[2] Dorland's Illustrated Medical Dictionary (2005) defines "fistula" as "an abnormal passage or communication, usually between two internal organs, or leading from an organ to the surface of the body."

9

actually hire someone with claimant's condition – this matter must be remanded for further consideration.

II. Claimant's Medical Condition.

Perhaps because of his panic disorder and agoraphobia, claimant appears to have obtained much of his medical treatment on an emergency basis, rather than planned and effective treatment for his physical ailments. Nevertheless, medical records show that at least as early as 2009, claimant suffered from sigmoid diverticulitis, with gastrointestinal bleeding. See, e.g., Admin. Rec. at 497, 553. At some time thereafter, he developed three or four abdominal fistulas. By June of 2015, claimant's medical records indicate that he had three abdominal "wounds" to his lower abdomen, at least one of which was draining stool. Id. at 529. Claimant reported that he obtained treatment at an emergency room in March of 2012, but the wounds never healed and, in fact, had gotten worse over time. Id. at 532. He told the examining advanced nurse practitioner that "drainage fluctuates from day to day" and "he has even seen food, rice, come out of one of the wounds." Id. In September of 2016, claimant again presented to an emergency room. He underwent a CT scan and was diagnosed with a "fistula or a tract that communicates from [his] colon to [his] skin (colocutaneous) that is new and a continued fistula that communicates from [his]

colon to [his] bladder (colocesical)."  Id. at 585.  He was told that his condition needs to be managed by a surgical specialist. Id.

In September of 2016, claimant was examined by Dr. Leandro Feo, who reported a "colocutaneous fistula with moderate to high output that required surgical correction" in the form of "major abdominal surgery with the possibility of a colostomy."  Id. at 854.  Dr. Feo also noted that claimant's "current condition interferes with his lifestyle" and his "health issue has become a priority and needs to be addressed in order for him to maintain function on a daily basis."  Id.  See also Id. at 837 (September of 2016 examination at Catholic Medical Center notes "multiple colocutaneous fistulas" which "have been present for about 7 years and worsened a couple of years ago."); 590 (October of 2016, Manchester Community Health Center notes, observing "LL abdomen with fistula leaking stool"); 1498 (March of 2018 visit to Surgical Care Group at which it was observed that claimant's fistula had "moderate output with recurrent abscess.").

Prior to undergoing surgery in August of 2017,[3] claimant had been placing toilet paper in and around his wounds in order to contain the draining stool and suppress the attendant odor. See, e.g., Admin. Rec. at 838 (Catholic Medical Center treatment notes). The treating medical professional noted that "the problem is generally described as inadequately controlled" and advised claimant "to use either an infant scented diaper or feminine hygiene pad to assist with odor and drainage." Id. at 841. At the hearing conducted on February 7, 2017, claimant testified that:

> I go through a lot of toilet paper a day and I'm always going to the restroom a lot and I'm always wearing a jacket. I never take the jacket off because if I'm in a meeting and there's people around me, I always – my stomach, it's like if you have a bag, it'll pass gas. My stomach will do the same thing. It's not like, it's not like passing gas where you can feel like you're going to fart. This is like it just happens, so I wear a jacket and I always have it zipped up or be prepared or I'll try and run off.

Admin. Rec. at 63-64.

---

[3] Corrective surgery was initially recommended to claimant in or around 2012. It was, however, significantly delayed because his mental impairments made him too frightened to seek treatment. See, e.g., Admin. Rec. at 66. Then, once he was persuaded to pursue surgical treatment, he was suffering from an ongoing infection stemming from a dental abscess. He was advised that, prior to any abdominal surgery, his infection would have to be resolved. That, in turn, required the extraction of numerous teeth, including all of those on the top of his mouth. See, e.g., Admin. Rec. at 56, 70-71.

The problem presented here is this: the ALJ supportably concluded that if claimant were to discontinue his alcohol abuse, he would be capable of performing the physical requirements of light work. But, the ALJ did not address the impact that claimant's fistulas would have on his employability – that is, plaintiff is capable of substantial gainful activity only if employers in general would actually be willing to hire someone with the unavoidable effects and physical manifestations of claimant's physical condition.

To be sure, the ALJ did briefly mention claimant's fistulas and leaking stool. But, he dismissed them as not impacting claimant's ability to work, citing one of claimant's medical records for the proposition that "claimant noted that the fistula did not affect his work." Admin. Rec. at 20. The medical record cited for that proposition relates to care that was provided in September of 2016 – nearly seven years <u>after</u> claimant had last worked. It's evidentiary value is minimal at best (indeed, it is entirely possible that the medical care provider meant that claimant's fistulas "did not affect his ability to work" because she knew that claimant did not work). <u>See</u> Admin. Rec. at 842. The ALJ also noted that claimant "was able to perform physical activities as long as he covered his fistulas with protective dressings." <u>Id</u>. at 21. Again,

however, claimant's <u>physical abilities</u> are not questioned. It is his ability to secure employment despite the presence of open fistulas that leak stool and intestinal gas in the work environment and the availability of work to someone with that condition.

There is certainly evidence in the record pointing to the conclusion that, <u>despite</u> claimant's physical abilities, employers would be very reluctant (if not highly unlikely) to actually hire him. For example, at the February, 2017, hearing, the vocational expert testified as follows:

> Question: He has open wounds on his abdomen seeping feces and I'm wondering what impact that has on the job base.
>
> Answer: Well, I mean one -- I don't want to make a medical determination, I can only say like, you know, people with ostomies have worked in other jobs. I mean that doesn't preclude anybody from working as long as you take care of it, you know, and deal with the odor issues, so it - as long as it's medically taken care of, it shouldn't be a problem.
>
> Q. Well, at this point, it's taken care of with wads of toilet tissue, so –
>
> A. Well, I mean I would assume that that would create a smell which could create a problem with, with maintaining employment.

Admin. Rec. at 78. Similarly, at the hearing held on August 9, 2018, a different vocational expert testified that a person with

fistulas that discharge fecal matter and give off an odor would not be tolerated in the workplace:

> Question: Thank you. Ms. Gerrish, I just plain forgot to ask and I apologize, we, we have if we have a hypothetical person who is otherwise capable of the light exertional hypothetical that His Honor gave but that person has a colorectal abscess, a fistula that literally exudes odors and sometimes fecal material in, in the setting of the workplace, would that be tolerated in an ordinary workplace?
>
> Answer: I don't believe it would, Attorney Jackson.

Id. at 131-32. Finally, claimant submitted the affidavit of David Meuse, a vocational expert. Mr. Meuse testified that claimant's condition precluded all work. More specifically, he testified that those jobs originally identified by the vocational expert as representative employment were all explicitly excluded by, among other things, health and hygiene concerns related to claimant's condition:

> I have been informed that the vocational expert at Mr. Dufresne's hearing on February 7, 2017 testified that an individual with Mr. Dufresne's limitations could perform the following jobs:
>
> - Dishwasher/Kitchen Helper, DOT# 318.687-010
> - Janitor, Cleaner/Industrial, DOT# 381.687-018
> - Packer, Hand, DOT# 920.587-018
> - Information Clerk, DOT# 237.367-018
> - Assembler, Small Parts (specifically, Type-Bar-and-Segment), DOT# 706.684-026
> - Laundry Worker, DOT# 302.685-010

> It is my professional opinion that Mr. Dufresne's open
> wounds that continually seep fecal matter preclude all
> work. On an ongoing basis, no employer will tolerate
> the smell, the necessity for frequent cleaning breaks,
> and the health hazard presented by his condition. In
> addition, there are specific problems associated with
> each of the positions identified by the vocational
> expert.
>
> The Dishwasher position is precluded because of the
> risk of dishware, cookware, and silverware being
> contaminated by fecal matter and the associated health
> risks.
>
> The Laundry position is also precluded by the risk of
> contaminating household articles with fecal matter and
> the associated health risks.
>
> According to the DOT definition of Hand Packer, an
> individual in this job may package bakery items, bulk
> food, meat (including sausage, wieners, dried beef,
> and sliced bacon), and candy. Again, concerns over
> contamination with fecal matter and associated health
> risks preclude this position.
>
> I have been told that the vocational expert testified
> that the Small Parts Assembler position would be
> precluded because of the proximity to other bench
> workers. I agree with this assessment. The risk of
> exposure to fecal matter and the odor of intestinal
> gas on an ongoing basis would be intolerable to the
> co-workers. Further, Mr. Dufresne's social anxiety
> would also preclude such close interaction.

Admin. Rec. at 441, Affidavit of David W. Meuse at paras. 9-13.

That evidence was unrebutted, and it is uncontested by the Commissioner. So, while the Commissioner is correct in noting that an ALJ is not obligated to discuss all evidence in the

16

record, material evidence of this sort – strongly suggesting that claimant's condition makes him actually unemployable - cannot be ignored. As this court has previously noted:

> because the ALJ's decision completely failed to mention any of the evidence [on which claimant relies], it is impossible to determine whether this evidence was considered and implicitly discredited or instead was simply overlooked. See Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) ("[W]e need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.").

Lord v. Apfel, 114 F. Supp. 2d 3, 14 (D.N.H. 2000) (emphasis supplied).

**Conclusion**

In an otherwise thorough and thoughtful opinion, the ALJ neglected to discuss substantial (and seemingly uncontroverted) evidence suggesting that the physical manifestations of claimant's condition might well render him unable to secure gainful employment (notwithstanding his physical ability to perform a range of light work).

For the foregoing reasons, claimant's motion to reverse the decision of the Commissioner (document no. 8) is granted to the

17

extent he seeks a remand for further proceedings.  The
Commissioner's motion to affirm his decision (document no. 10)
is denied.

Pursuant to sentence four of 42 U.S.C. § 405(g), the
decision of the ALJ dated September 14, 2018, is vacated and
this matter is hereby remanded for further proceedings
consistent with this order.  The Clerk of Court shall enter
judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

February 18, 2020

cc:  Alexandra M. Jackson, Esq.
     Daniel S. Tarabelli, Esq.